**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 2 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

WAGONER COUNTY REAL
ESTATE, Rural Route 5, Box 340,
Wagoner,

      Defendant.

---

NANETTE LEES,

      Claimant-Appellant.

No. 00-7059

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 99-CV-342-S)**

---

Linda A. Epperley, Assistant United States Attorney (Sheldon J. Sperling, United States Attorney with her on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.

Robert G. Brown, Tulsa, Oklahoma, for Claimant-Appellant.

---

Before **SEYMOUR** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **LUCERO,** Circuit Judge.

**SEYMOUR** , Circuit Judge.

Claimant Nanette Lees, the owner of real property in Wagoner, Oklahoma, appeals from a judgment ordering forfeiture of the property for its use in the facilitation of federal drug law violations.    <u>See</u> 21 U.S.C. § 881(a)(7) (1999). On appeal, Ms. Lees contests the validity of the forfeiture decree, arguing that (1) the property was her homestead, and not subject to forfeiture under Oklahoma law; (2) an improper jury instruction concerning probable cause interfered with her ability to demonstrate that the property was not used in illegal activity; (3) the erroneous denial of her motions in limine to exclude evidence of her prior drug conviction and her grandson's drug-related juvenile adjudication curtailed her innocent owner defense; and (4) the forfeiture of her property constituted an excessive fine in violation of the Eighth Amendment of the United States Constitution. After ordering supplemental briefing on the fourth issue and hearing oral argument by the parties, we now affirm in part, reverse in part, and remand for further proceedings.

# I

On June 24, 1999, the Wagoner Police Department arrested an individual named Brian Sevier for possession of a large bag of marijuana. Sevier cooperated with law enforcement officers, telling them that he had purchased the marijuana at Ms. Lees' residence from Jade Lees, who was Sevier's friend and Ms. Lees' grandson. Sevier agreed to call Jade and arrange another marijuana purchase. The officers drove to Ms. Lees' house, where they saw two men sitting on the back porch, smoking what the officers believed to be marijuana cigarettes. Jade appeared in the doorway.

The officers asked Jade for permission to search the residence. Jade stated that, although he lived there, he could not consent to the search because the property belonged to Ms. Lees, who was driving home from Oklahoma City. Ms. Lees was called on her cell phone. She gave oral permission for the search and said that she would arrive home within an hour. When Ms. Lees entered the house, she took a seat, placed the black bag she was carrying beside her chair, and signed a search consent form.

In their search, the officers found a gallon-size bag of suspected marijuana, a large set of scales, vials containing suspected steroids, several hundred dollars in cash, and approximately fifteen firearms. These items were found primarily in

Jade's bedroom. With her consent, an officer also searched Ms. Lees' black bag and found a large quantity of Valium pills.

On June 29, a search warrant was issued and the officers conducted a second search of the property. Among other things, they found photographs of marijuana cultivation, an ashtray with marijuana residue, vials of suspected testosterone, and some cigarette rolling papers. On the patio, they observed a scattering of numerous marijuana cigarette butts.

Both Nanette and Jade Lees were arrested on state drug charges. The state pursued charges against Jade Lees, but not against Ms. Lees. Previously, Ms. Lees had been placed on probation after entering a guilty plea to a federal misdemeanor charge of possession of 33,600 tablets of Valium, arising from her December 4, 1998, arrest at a United States Border Patrol Checkpoint outside of Laredo, Texas. Following her arrest on the state drug charges, Ms. Lees' probation was revoked and she was committed to the custody of the United States Bureau of Prisons to serve a sentence of twelve months.

The United States brought this civil in rem forfeiture action, alleging that the property had been used, or intended to be used, to commit or facilitate the commission of federal drug offenses and was therefore forfeitable under

21 U.S.C. § 881(a)(7) (1999). [1] The district court issued a warrant of arrest in rem for the property. Ms. Lees contested the forfeiture, asserting that the property was protected by the homestead exemption, that it was not used in connection with a drug offense, that she was an innocent owner of the property, and that

---

[1]     As applicable to the instant case, § 881(a)(7) provided:

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . .

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Congress has significantly amended the civil forfeiture statutes for proceedings commenced after August 23, 2000. See Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, sec. 21, 114 Stat. 202, 225. The "innocent owner" defense which appeared in § 881(a)(7) is now codified at 18 U.S.C. § 983(d), as part of the general rules for civil forfeiture procedures and does not now appear anywhere within § 881. In enacting § 983(d)(2)(A), Congress clarified the definition of an "innocent owner" to be one who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."

-5-

forfeiture of the property, with an appraised value of $136,000, would constitute an excessive fine in violation of the Eighth Amendment.

The United States filed a motion for partial summary judgment on many of Ms. Lees' claims and defenses. The district court granted the government's motion with respect to the probable cause and homestead exemption issues. The remainder of the case proceeded to a jury trial.

At trial, Ms. Lees testified on her own behalf. Sevier, local law enforcement officers involved in the investigation, and a special agent with the federal Drug Enforcement Administration provided testimony for the government. At the conclusion of the evidence, the court determined that, as a matter of law, a potential forfeiture of Ms. Lee's property would not be grossly disproportionate and therefore would not violate the Excessive Fines clause. The jury returned its verdict in favor of the government and the district court entered a decree of forfeiture. This appeal followed.

## II

First we consider Ms. Lees' claim that, as a resident of Oklahoma and a Creek Indian, her property may not be forfeited because it is protected by the general Oklahoma homestead exemption, Okla. Stat. tit. 31, § 1(A),[2] and the

---

[2] Section 1(A) provides, in pertinent part:

(continued...)

Oklahoma constitutional provision relating to Indian homesteads, Okla. Const. art. XII, § 1(D). [3] Ms. Lees points out that the Oklahoma Supreme Court has ruled that a statutory homestead is not subject to forfeiture under the Oklahoma Uniform Controlled Dangerous Substances Act. State ex rel. Means v. Ten (10) Acres of Land, 877 P.2d 597, 601 (Okla. 1994).

The district court granted the government's motion for partial summary judgment on this issue, determining that federal forfeiture law preempted Oklahoma law as to the forfeitability of homestead property. See Aplee. App., vol. I at 142. "Whether state law is preempted by federal law is a conclusion of law which we . . . review de novo." Garley v. Sandia Corp., 236 F.3d 1200, 1206 (10th Cir. 2001).

Congress has the power to preempt state law under Article VI of the Supremacy Clause, which provides that the laws of the United States are "the

---

[2](...continued)
> [T]he following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:
>
> 1. The home of such person, provided that such home is the principal residence of such person[.]

[3] Article XII, § 1(D) provides:

> Nothing in the laws of the United States, or any treaties with the Indian Tribes in the State, shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the State.

supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Federal law preempts state law in three circumstances: (1) when Congress explicitly defines the extent to which the enacted statute preempts state law; (2) when state law actually conflicts with federal law; or (3) when state law attempts to regulate "conduct in a field that Congress intended the Federal Government to occupy exclusively." Choate v. Champion Home Builders Co., 222 F.3d 788, 792 (10th Cir. 2000) ( citing English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990)); see also 21 U.S.C. § 903 (providing that federal forfeiture law should not be "construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, . . . *unless there is a positive conflict"* between federal and state law) (emphasis supplied). In any preemption analysis, congressional intent is the "ultimate touchstone." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (additional quotations omitted).

The language of § 881(a)(7) does not specify the extent to which state homestead laws are affected. Contrary to claimant's contentions, however, there is no legal significance in the lack of an explicit statement of preemption. Section 881(a)(7) provides for the forfeiture of "[a]ll real property" used to commit a federal drug law violation. The statute's broad, unambiguous language

-8-

is in direct conflict with Oklahoma law allowing forfeiture of all property except homestead property.

This literal reading of § 881(a)(7) is consistent with the relevant legislative history. A stated purpose in enacting the Comprehensive Crime Control Act of 1984, of which § 881(a)(7) is a part, was

> "to enhance the use of forfeiture . . . as a law enforcement tool in combating . . . drug trafficking. . . . This bill is intended to eliminate the statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies."
>
> S. Rep. No. 225, 98th Cong. 2d Sess. 191, 192, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3374, 3375. Moreover, the legislative history evinces specific intent to extend civil forfeiture to homesteads. *See id.* at 195, *reprinted in* 1984 U.S.C.C.A.N. 3378 (civil forfeiture statute extends to "house" of drug offender to be [a] "powerful deterrent" to commission of drug offense).

United States v. Lot 5, Fox Grove, 23 F.3d 359, 363 (11th Cir. 1994) (alterations in original).

All other federal courts considering the interplay between § 881(a)(7) and state homestead protections have determined that residential property is subject to forfeiture despite state exemptions. See id.; United States v. 3262 SW 141 Ave., 33 F.3d 1299, 1301 n.6 (11th Cir. 1994); Brewer v. United States (In re Brewer), 209 B.R. 575, 577 (Bankr. S.D. Fla. 1996); United States v. One Parcel Property, 894 F. Supp. 397, 405 (D. Kan. 1995); United States v. 1606 Butterfield Rd., 786 F. Supp. 1497, 1505 (N.D. Iowa 1991); United States v. 212 Airport Rd. S.,

771 F. Supp. 1214, 1216 (S.D. Fla. 1991);    see also  Means., 877 P.2d at 601

(stating that "[f]ederal courts generally have found state homestead exemptions

preempted by federal forfeiture laws").

In light of the clear statutory language, the legislative history, and the

unanimity of federal court decisions, we hold that federal preemption of the

Oklahoma homestead exemptions is necessary to carry out the Congressional

intent underlying § 881(a)(7) and to maintain uniformity in federal forfeiture

law. [4]  Accordingly, the district court's preemption ruling properly led to the

proceeding in which a jury determined that forfeiture of Ms. Lees' residential

property was justified.


### III

Concerning the conduct of the forfeiture proceedings, Ms. Lees asserts that

the district court made two erroneous rulings: (A) in instructing the jury

concerning its determination on the issue of probable cause and (B) in denying

her motion in limine to exclude evidence of her prior drug conviction and Jade's

juvenile adjudication for a drug offense.  These contentions must be placed in the

---

[4]    Claimant's arguments against preemption are unpersuasive.  In particular, her references to bankruptcy law fail to support the contention that state homestead exemptions are applicable to § 881(a)(7).  The bankruptcy statute expressly allows incorporation of state law.    See 11 U.S.C. § 522(b)(2)(A).  In contrast, there is no such provision applicable to § 881(a)(7).

procedural framework applicable to a civil in rem forfeiture case. The government bears the initial burden of showing probable cause to believe that a nexus existed between the property and specified illegal activity sufficient to justify forfeiture. See United States v. $149,442.43 in U.S. Currency, 965 F.2d 868, 876 (10th Cir. 1992). [5]

Once the government establishes probable cause, the burden shifts to the claimant to demonstrate by a preponderance of the evidence that the property is not subject to forfeiture. Id. at 876-77. The claimant may accomplish this either by showing that the property was not in fact used for the specified illegal activity, or by demonstrating that she was an innocent owner under § 881(a)(7).

## A. Probable cause

Concerning the government's showing of probable cause, Ms. Lees claims the court erred in instructing the jury as follows:

> the court has previously determined from the evidence presented that the United States has proven probable cause that the Defendant property was used to commit or facilitate the commission of drug offenses.

---

[5] The Civil Asset Forfeiture Reform Act of 2000 changes the government's initial burden of proof. Pursuant to 18 U.S.C. § 983(c)(1), the "burden of proof is on the Government to establish, by a *preponderance of the evidence*, that the property is subject to forfeiture." (emphasis added). We have held that this Act does "not apply to a proceeding commenced before its effective date but pending on appeal after that date." United States v. Lot Numbered One of the Lavaland Annex, 256 F.3d 949, 958 (10th Cir. 2001).

Because the government has proven probable cause to believe that the Defendant property was used to commit or facilitate the commission of drug offenses, the claimant bears the burden in this case of proving either (1) the Defendant property was not used to commit or facilitate the commission of drug offenses or (2) that she was an innocent owner of the Defendant property.

Aplee App., vol. I at 182.

Ms. Lees did not object to this instruction, so we review it for plain error. United States v. Fabiano, 169 F.3d 1299, 1302-03 (10th Cir.), cert. denied, 528 U.S. 852 (1999). "Whether the facts produced at a forfeiture proceeding constitute probable cause" is a legal conclusion, which we review de novo. $149,442.43, 965 F.2d at 876.

The test for determining probable cause for forfeiture purposes is the same as applies in arrests, searches and seizures. Accordingly, the government must demonstrate a reasonable ground for belief of guilt supported by less than prima facie proof, but more than mere suspicion. Circumstantial evidence of drug transactions may support the establishment of probable cause. However, the presence or absence of any single factor is not dispositive.

Id. at 876-77 (quotations and citations omitted).

Here, the district court made a probable cause determination prior to trial, when it issued the warrant of arrest in rem for the property. By the time the jury was instructed, the court had heard testimony bolstering and confirming its earlier determination that the government demonstrated a reasonable ground for believing the property was used to facilitate drug transactions. Accordingly, the

-12-

district court did not err instructing the jury that the burden of proof had shifted to Ms. Lees.

## B. Motion in limine

Ms. Lees also claims the district court erred in summarily denying her motions in limine to bar impeachment evidence of her prior misdemeanor conviction for possession of Valium and Jade's adjudication as a juvenile delinquent for possession of a controlled substance. She contends this ruling not only violated Rule 609 of the Federal Rules of Evidence, [6] but also "destroy[ed]

---

[6]    Rule 609 provides, in pertinent part:

(a) **General rule** . For the purpose of attacking the credibility of a witness,

> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused;

. . .

(d) **Juvenile adjudications** . Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is

(continued...)

her defense of innocent owner" by forcing her to provide preemptive testimony about her own conviction and to forgo Jade's testimony on his version of the facts. Aplt. Br. at 28.

"We review a district court's rulings on evidentiary matters and motions *in limine* for abuse of discretion." United States v. Weller, 238 F.3d 1215, 1220 (10th Cir. 2001). "In order to reverse a district court judgment on account of an evidentiary ruling, [appellant] must make a clear showing she suffered prejudice, and the ruling was inconsistent with substantial justice or affected her substantial rights." Coletti v. Cudd Pressure Control, 165 F.3d 767, 773 (10th Cir. 1999) (quotations omitted).

As to the ruling on the admissibility of Ms. Lee's prior conviction under Rule 609, our conclusion is dictated by the holding of Ohler v. United States, 529 U.S. 753 (2000). In Ohler, the trial court denied the defendant's in limine motion to preclude the government's use of a prior conviction for impeachment purposes. The defendant then testified on direct examination as to the prior

---

[6](...continued)
    satisfied that admission in evidence is necessary for a fair
    determination of the issue of guilt or innocence.

We note that, on appeal, Ms. Lees also argues the evidentiary ruling was in violation of Fed. R. Evid. 404, concerning character evidence offered for the purpose of showing conduct. Because Ms. Lees did not raise the Rule 404 argument to the district court, we do not consider it here. See Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992).

conviction. The Court held that once a party "preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." 529 U.S. at 760. Like the defendant in Ohler, Ms. Lees may not complain on appeal that the evidence was erroneously admitted.

With respect to Jade's adjudication, we need not determine whether the district court's ruling was consistent with Rule 609(d) concerning the admissibility of juvenile adjudications. Ms. Lees herself testified that previously Jade had been "arrested for drug problems" and he had been "found with marijuana, cocaine, methamphetamine and firearms." Aplee. App., vol. II at 260. As a result, impeachment of Jade by evidence of his adjudication would have had little effect on the proceedings. Accordingly, even if erroneous, the district court's ruling did not prejudice Ms. Lees and does not constitute reversible error.

## IV

Ms. Lees contends the forfeiture of her residence constituted an excessive fine in violation of the Eighth Amendment of the United States Constitution. See Austin v. United States, 509 U.S. 602, 622 (1993) (holding that forfeiture under § 881(a)(7) is limited by the Eighth Amendment's Excessive Fines Clause). In United States v. Bajakajian, 524 U.S. 321 (1998), the Supreme Court formulated

the analytical framework for determining whether a punitive forfeiture is unconstitutionally excessive.

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality[.]" Id. at 334. "[T]he courts of appeals, reviewing the proportionality determination *de novo*, must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is *grossly* disproportional to the gravity of the defendant's offense, it is unconstitutional." Id. at 336-37 (emphasis added) (footnote omitted). [7]

Bajakajian involved an international traveler who failed to declare that he was carrying currency of more than $10,000 out of the United States, in violation of the reporting requirements of 31 U.S.C. § 5316. The government brought a criminal proceeding against the traveler, seeking forfeiture of the $357,144 it had seized from him at the airport. 524 U.S. at 324-35. After comparing the gravity of the traveler's offense with the $357,144 forfeiture sought by the government,

---

[7]     Although Bajakajian arose from a criminal in personam forfeiture, the Supreme Court did not suggest the gross disproportionality test does not apply to civil in rem forfeitures that are punitive in nature. The other courts of appeals that have considered the issue have concluded "that the 'grossly disproportional' standard does indeed apply to punitive civil forfeitures, thus filling the void previously left by the Supreme Court in *Austin*, 509 U.S. at 622-23." United States v. Ahmad, 213 F.3d 805, 816 n.4 (4th Cir.), cert. denied, 531 U.S. 1014 (2000); United States v. 3814 N.W. Thurman St., 164 F.3d 1191, 1197 (9th Cir. 1999); United States v. 415 E. Mitchell Ave., 149 F.3d 472, 476-77 (6th Cir. 1998)). We agree with this conclusion.

-16-

the Court concluded that the forfeiture was grossly disproportional because it was "larger than the $5,000 fine imposed by the District Court by many orders of magnitude, and it [bore] no articulable correlation to any injury suffered by the Government." Id. at 339-40.

To reach this conclusion, the Court examined several factors. One of the most important was Congress's judgment about the appropriate punishment for the owner's offense. Maximum statutory fines provide guidance on the legislative view of the seriousness of the offense. See United States v. 817 N.E. 29th Dr., 175 F.3d 1304, 1309 (11th Cir. 1999), cert. denied, 528 U.S. 1083 (2000) (stating that, under Bajakajian, "if the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional"). The fines set out in the sentencing guidelines, promulgated by the United States Sentencing Commission, are another way of "[t]ranslating the gravity of a crime into monetary terms." Id. at 1309-10; see also Bajakajian, 524 U.S. at 338-39. A dditional factors for consideration of the gravity of the offense include the extent of the criminal activity, Bajakajian, 524 U.S. at 337-38; related illegal activities, id.; and the harm caused to other parties, id. at 339.

There are significant distinctions between Bajakajian and the present case. A criminal forfeiture, such as the one at issue in Bajakajian, imposes punishment upon an individual who has committed a specific crime. See United States v.

-17-

$8,850 in U.S. Currency, 461 U.S. 555, 567 (1983) (a criminal proceeding "may often include forfeiture as part of the sentence"). Here, the challenged forfeiture is a civil in rem proceeding against property. Historically, such actions are brought under the legal fiction that "'the thing is primarily considered the offender.'" Austin, 509 U.S. at 615 (quoting J.W. Goldsmith, Jr.,Grant Co. v. United States, 254 U.S. 505, 511 (1921)).

Additionally, in Bajakajian the property owner was charged with one specific federal crime. The § 881(a)(7) forfeiture filing against Ms. Lees' property resulted from her own possession of Valium and also her knowledge of, or consent to, Jade's illegal activities on the property. Neither Ms. Lees nor Jade was charged with a federal offense. Jade was prosecuted in the state system; Ms. Lees was subjected to probation revocation proceedings in a drug offense unrelated to the property.

To adapt the Bajakajian standard to these circumstances, we must supplement the factors discussed by the Supreme Court. As we explained in United States v. 829 Calle de Madero, 100 F.3d 734 (10th Cir. 1996), a case decided before Bajakajian, a proportionality analysis is "factually intensive," so that a catalog of factors is not "necessarily exclusive." Id. at 738 (quotation omitted). Like Ms. Lees, the owner in 829 Calle de Madero challenged the constitutionality of a residential forfeiture under § 881(a)(7). We stated that

-18-

[i]n evaluating proportionality, courts must compare the severity of the offense with which the property was involved, the harshness of the sanction imposed, and the culpability of the claimant. Relevant factors in assessing the harshness of the sanction include the value of the property forfeited, its function, and any other sanctions imposed upon the claimants by the sovereign seeking forfeiture. Against these factors, the severity of the offense must be evaluated, taking into account the extent of both the claimant's and the property's role in the offense, the nature and scope of the illegal operation at issue, the personal benefit reaped by the claimant, the value of any contraband involved in the offense, and the maximum sanction Congress has authorized for the offense.

Id. Thus, in addition to the Bajakajian factors, we suggested other considerations: the general use of the forfeited property, any previously imposed federal sanctions, the benefit to the claimant, the value of seized contraband, and the property's connection with the offense. [8] Bajakajian in no way undermines

---

[8] 829 Calle de Madero requires the government to make an initial showing that "[t]he connection between the property and the offense [is] more than a fortuitous or incidental one." Id., 100 F.3d at 737. We referred to the government's showing as the "instrumentality test." Id. If the government meets the test, then the burden shifts to the claimant to show that "the forfeiture is grossly disproportionate in light of the totality of the circumstances." Id. This remains a sensible allocation of the burden of proof post-Bajakajian.

In its supplemental brief and during oral argument, the government has claimed that Bajakajian expanded the effect of the government's satisfaction of the 829 Calle de Madero "instrumentality or nexus test." According to the government, once it makes a showing that the property's criminal use is more than fortuitous or incidental, then a forfeiture of that property can never be held to be constitutionally excessive. The government's argument has at least two flaws. First, the Supreme Court in Bajakajian uses the term "instrumentality" in a much narrower sense than this court uses it in the "instrumentality test" set out in 829 Calle de Madero. Bajakajian limits "'[i]nstrumentality forfeitures' . . . to the

(continued...)

-19-

the relevance of these factors in a proportionality analysis for a forfeiture proceeding under § 881(a)(7).

Informed by Bajakajian and 829 Calle de Madero, we proceed to an evaluation of the district court's proportionality analysis. In ruling on the government's motion for summary judgment, the district court properly articulated the standard of gross proportionality, citing Bajakajian and 829 Calle de Madero. It concluded that the evidentiary record was not yet sufficiently developed to determine the validity of Ms. Lees' claim and therefore denied the government's motion, subject to reconsideration at the time of trial. Aplee. App., vol. I at 141.

At the close of evidence, the district court made its decision on the issue, stating:

---

[8](...continued)
property actually used to commit an offense and no more." 524 U.S. at 333 (citing Austin v. United States, 509 U.S. at 627-28 (Scalia, J., concurring in part and concurring in judgment)). Second, Bajakajian contains conflicting language concerning the relevance of an instrumentality finding in a punitive civil *in rem* proceeding under § 881(a)(7). See id. at 333-34 & n.9 (implying that instrumentality may be relevant to an excessiveness analysis in an *in rem* proceeding, but also stating that "the excessiveness of a punitive forfeiture [such as one under § 881(a)(7)] involves solely a proportionality determination") (emphasis added)). As discussed in the text above, the strength of the connection between the offense and the property is a consideration in an evaluation of excessiveness. Contrary to the government's contention, however, a showing that the connection is "more than a fortuitous or incidental one" is not dispositive of the issue. 829 Calle de Madero, 100 F.3d at 738.

-20-

There was a matter . . . of the gross proportionality test that I said that I would make a decision on at the end of the evidence. And the principal issue there that might be at issue here is whether or not the forfeiture is grossly disproportionate in light of the totality of the circumstances.

And from what I'm able to determine about this from the evidence, the severity of the offense with which the property was involved, the harshness of the sanction imposed and the culpability of the claimant makes it appear it isn't grossly [dis]proportionate, to the Court.

And I so find.

Id., vol. II at 372-73.

"The factual findings made by the district courts in conducting the excessiveness inquiry . . . must be accepted unless clearly erroneous." Bajakajian, 524 U.S. at 336 n.10. Notwithstanding its reference to Bajakajian and 829 Calle de Madero, the district court made no specific findings on any of the factors listed in those two controlling cases. In particular, there are no findings concerning legislative penalties for offenses committed in connection with the property, other related illegal activities, the harm caused by the offenses, the amount of the forfeiture, the benefit to Ms. Lees, or the value of seized contraband.

Although information on some factors can be gleaned from the record, it is more appropriate for the district court to make these findings in the first instance. See Davis v. United States, 192 F.3d 951, 961 (10th Cir. 1999) (stating that the

-21-

appellate court "should not and thus will not perform the fact-finding function reserved for the district courts"). To reach a reviewable proportionality analysis, the district court must make findings on each of the relevant factors and determine whether forfeiture of Ms. Lees' property constitutes an excessive fine under the Eighth Amendment. Accordingly, we remand the issue to the district court for further proceedings consistent with this opinion.

## V

In sum, we AFFIRM the district court's rulings concerning the Oklahoma homestead exemption, the appropriate jury instructions, and Ms. Lees' motions in limine. We REVERSE and REMAND the claim that forfeiture of Ms. Lees' property violated the Eighth Amendment's Excessive Fines Clause.