**F I L E D**
**United States Court of Appeals
Tenth Circuit**

**JUN 23 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

ONE PARCEL OF REAL
PROPERTY KNOWN AS:
16614 CAYUGA ROAD,
WYANDOTTE, OTTAWA
COUNTY, OKLAHOMA, and all
buildings, appurtenances, and
improvements thereon,

       Defendant.

       No. 02-5059
    (D.C. No. 96-CV-924-B)
      (N.D. Oklahoma)

---

RICHARD LYNN DOPP,

       Claimant - Appellant.

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

ONE PARCEL OF REAL
PROPERTY KNOWN AS:  16614
CAYUGA ROAD, WYANDOTTE,
OTTAWA COUNTY, OKLAHOMA,

       No. 02-5060
    (D.C. No. 96-CV-924-B)
      (N.D. Oklahoma)

and all buildings, appurtenances, and improvements thereon,

Defendant.

_____

PHYLLIS BOEHNE,

Intervenor - Appellant.

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** , **PORFILIO** , and **ANDERSON** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The cases are therefore ordered submitted without oral argument.

Claimants Richard Lynn Dopp, an Oklahoma state prisoner, and his mother, Phyllis Boehne, each appearing pro se, appeal the district court's judgment

---

*      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

ordering the forfeiture of the defendant property, 16614 Cayuga Road, to the United States, pursuant to 21 U.S.C. § 881(a)(6) and § 881(a)(7). [2] We affirm.

A May 1996 search of Dopp's residence and real property at 16614 Cayuga Road revealed eighty-two one-pound bags of marijuana, bags of marijuana seeds, 362 marijuana seedling plants, drug paraphernalia, firearms, and $33,725 in cash. Dopp was ultimately convicted in Oklahoma state court of trafficking in marijuana, maintaining a residence resorted to by users of a controlled dangerous substance, and unlawful possession of a firearm. He was sentenced to life imprisonment without possibility of parole. During the criminal proceedings, witnesses testified that Dopp had cultivated and sold large quantities of marijuana at the property for many years. One witness testified he delivered fifty to ninety pounds of marijuana to Dopp's residence every two weeks.

On October 8, 1996, the United States filed a civil complaint *in rem* seeking the forfeiture of the defendant property, alleging it had been used to facilitate drug transactions and/or was purchased with proceeds of the drug transactions. Finding probable cause to believe the defendant property was subject to forfeiture under §§ 881(a)(6) and (7), the district court issued a warrant of arrest and notice *in rem*. Dopp filed a claim objecting to the forfeiture, and the

---

[2] Claimant Richard Lynn Dopp filed appeal No. 02-5059; his mother, Phyllis Boehne, filed appeal No. 02-5060. These appeals have been consolidated for procedural purposes only.

proceedings were stayed pending his state criminal proceedings. On July 2, 2001, after the stay was lifted, the district court held a bench trial on the government's claim of forfeiture. On August 8, 2001, more than a month after the trial, Dopp's mother, Phyllis Boehne, filed a motion to intervene and notice of claim, asserting that she was the true owner of the defendant property. The district court ruled Boehne's claim was time-barred. It then entered a judgment of forfeiture.

## Dopp's Appeal

Dopp first contends that the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983(c), should have governed the forfeiture proceedings, and, in particular, that he was entitled to appointed counsel under CAFRA. CAFRA, which significantly amended the procedures for civil judicial forfeiture proceedings, applies only to civil forfeiture proceedings commenced on or after its effective date, August 23, 2000. *See United States v. Wagoner County Real Estate*, 278 F.3d 1091, 1095 n.1 (10th Cir. 2002). Although the term "commenced" is not defined in CAFRA, it is clear that a judicial forfeiture proceeding is commenced when the government files the civil complaint. *See United States v. One "Piper" Aztec*, 321 F.3d 355, 359 (3d Cir. 2003) (relying in part upon CAFRA's legislative history); *United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1185 (9th Cir. 2002); *see also* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Although the

civil complaint was filed in October 1996, well before CAFRA's effective date, Dopp contends that CAFRA should be applied retroactively because the forfeiture trial did not begin until July 2001. This court and others have held, however, that CAFRA does not retroactively apply to cases pending prior to August 23, 2000. *See United States v. $30,006.25 in U.S. Currency*, 236 F.3d 610, 615 (10th Cir. 2000); *see also United States v. One "Piper" Aztec*, 321 F.3d at 358; *United States v. $80,180.00 in U.S. Currency*, 303 F.3d at 1185; *but see United States v. Real Prop. in Section 9*, 241 F.3d 796, 797 (6th Cir. 2001) (holding retroactive application of CAFRA proper where no prejudice to either party). Thus, the CAFRA did not govern the forfeiture proceedings and the district court did not err in denying Dopp's request for appointed counsel.

Next, Dopp contends the district court erred in denying his motion to suppress evidence, which he did not file until after the conclusion of the forfeiture trial. He asserts numerous arguments, all of which are related to his contention that the evidence seized in his state search, seizure, and arrest, was discovered in violation of the Fourth Amendment. Dopp is collaterally estopped from raising these Fourth Amendment issues as a defense to the civil forfeiture action, because these same issues were fully litigated in his state criminal prosecution and all of the criteria for application of collateral estoppel have been met. *See United States v. 6380 Little Canyon Road*, 59 F.3d 974, 979-80 (9th Cir.

1995) (abrogation on other grounds recognized by *United States v. $273,969.04 U.S. Currency*, 164 F.3d 462, 466 n.3 (9th Cir. 1999)). Contrary to Dopp's contention, it is clear from the record that all of the relevant pleadings and transcripts from the criminal proceedings were submitted to the district court.

Dopp next contends that the United States seized the defendant property without adequate notice or an adversary proceeding. This argument is without merit. It is clear from the record, including the notice *in rem*, that the defendant property was not seized until the conclusion of the forfeiture trial, the entry of the judgment of forfeiture, and the denial of the stay requests. The government posted notice of the potential seizure, but did not otherwise interfere with Dopp's enjoyment of the property. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 59 (1993). Indeed, as discussed below, Dopp effected several transfers of the property to and from his mother during the pendency of the forfeiture proceedings. Further, the record amply supports the district court's conclusion that the government afforded Dopp notice and an opportunity to be heard before seizing the defendant property for forfeiture. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Further, we conclude that the district court did not err in ruling that, based on the marijuana packages, plants and seeds, drug paraphernalia, and currency found at the defendant property, the government met its burden of showing

probable cause to believe that a nexus existed between the defendant property and illegal activity sufficient to justify forfeiture. *See United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 876-77 (10th Cir. 1992).

Next, Dopp contends the forfeiture constituted an excessive fine in violation of the Eighth Amendment's Excessive Fines Clause. *See Austin v. United States*, 509 U.S. 602, 622 (1993) (holding that forfeiture under § 881(a)(7) is limited by Excessive Fines Clause). A forfeiture under § 881(a)(7) violates the Excessive Fines Clause, if it is "grossly disproportional to the gravity of the defendant's offense." *Wagoner*, 278 F.3d at 1099 (quotation omitted).

In determining whether a civil forfeiture violates the Excessive Fines Clause, the government must make an initial showing that "the connection between the property and the offense is more than a fortuitous or incidental one"; "[i]f the government meets the test, then the burden shifts to the claimant to show that the forfeiture is grossly disproportionate in light of the totality of the circumstances." *Id*. at 1101 n.8 (quotation and citation omitted). Dopp contends we must remand this issue for consideration by the district court in the first instance because it did not expressly discuss the factors considered in an Excessive Fines Clause analysis. *See id*. at 1099-1102 (describing factors to be considered in making proportionality determination).

The district court did make detailed findings of fact demonstrating Dopp's extensive and long-term use of the defendant property for large-scale marijuana cultivation and distribution. Contrary to Dopp's assertion, these findings are clearly and amply supported by the record. We conclude Dopp did not meet his burden of establishing that the amount of the forfeiture is grossly disproportional to the gravity of his offense; thus, no remand is necessary. *See Wagoner*, 278 F.3d 1101 n.8. Moreover, the district court also found, with record support, that the defendant property constituted proceeds of crime, or property traceable to such proceeds, forfeitable under § 881(a)(6). As a matter of law, forfeiture of drug proceeds pursuant to § 881(a)(6) can never be constitutionally excessive. *United States v. Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1395-96 (10th Cir. 1997).

Next, Dopp contends the government failed to make timely disclosure of the evidence it would introduce at the forfeiture trial, in violation of Fed. R. Civ. P. 26. We agree with the district court's conclusion that Dopp suffered no unfair surprise or prejudice as a result of any untimely disclosure because the vast majority of the documents introduced at the forfeiture trial were the same as those admitted in his criminal trial, and the record reflects that it was clear throughout the forfeiture proceedings that the government would be relying on this evidence. *See Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100

F.3d 1353, 1362 (7th Cir. 1996) (holding that trial court has broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless). We further find no error with respect to the admission of DEA Agent Mayfield's testimony or the admission of excerpts of the transcripts of witness Flores' testimony.

Dopp's next argument, that the defendant property may not be forfeited under Oklahoma's homestead exemption, is without merit because this court has previously ruled that federal civil forfeiture of residential property is not precluded by Oklahoma's homestead exemptions. *Wagoner*, 278 F.3d at 1097. Dopp's next contention, that the forfeiture violated the Double Jeopardy Clause, is similarly without merit. *See United States v. Ursery*, 518 U.S. 267, 270 (1996) (ruling that civil forfeiture does not implicate the Double Jeopardy Clause); *Berryhill Farm Estates*, 128 F.3d at 1391 (same).

Finally, with respect to Dopp's last arguments, we conclude the district court correctly dismissed his counterclaim seeking reimbursement for mortgage, tax, and insurance payments he allegedly made on the defendant property pending the forfeiture proceedings, and in denying his post-trial motion for default judgment.

Throughout the pre-trial forfeiture proceedings and the forfeiture trial, Dopp represented to the district court that he was the owner of the defendant property. *See, e.g* ., Telephonic Pre-Trial Conference, at 8, 12-13. Inexplicably, one month after the close of forfeiture trial, but before the district court had entered a judgment of forfeiture, Dopp's mother, Phyllis Boehne, filed a motion to intervene, claiming that she actually owned the defendant property. She claimed to have acquired it by quitclaim deed from Dopp on October 18, 1996, after the government filed its forfeiture complaint, but before it filed its notice of lis pendens with the Ottawa County clerk's office (the county in which the defendant property was located). She asserted an "innocent owner" owner defense to forfeiture, alleging she had no knowledge in October 1996 of any illegal activity on the property. She further claimed to have no knowledge of the forfeiture proceedings, which had been pending for almost five years, until June 2001, just before the start of the forfeiture trial.

Notwithstanding her claims of ignorance, Boehne admitted loaning Dopp money in May 1996 to post bond and pay his lawyer with respect to the drug trafficking charges. On May 9, 1996, six months prior to her alleged acquisition of the defendant property, the government had recorded a caveat with the Ottawa County clerk's office, giving notice that it claimed an interest in the defendant

property. Notice of the potential forfeiture was issued on October 16, 1996, prior to her alleged acquisition, and posted at the defendant property, in an open and visible manner, on November 8, 1996, in accordance with the district court's warrant of arrest and notice *in rem*. In addition, the government gave public notice of the forfeiture proceedings throughout the month of April 1997, in two newspapers, one of general circulation in Ottawa County, and another of general circulation in the Northern District of Oklahoma, as required by Rule C(4) of the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules), which govern procedure in civil forfeiture actions. *See United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1308 n.2 (10th Cir. 1994). Proof of publication was filed with the district court in May 1997. Moreover, though Boehne claimed she first learned of the forfeiture proceedings prior to trial, she did not notify the district court of her alleged interest in the property until several weeks after the close of the trial. [3]

The government filed a motion to strike Boehne's claim because she had failed to file a timely claim and because it discovered that Boehne had executed a quitclaim deed of the defendant property back to Dopp on March 23, 1998, while

---

[3] Dopp did attempt to introduce a copy of the October 18, 1996 quitclaim deed during the forfeiture trial. The district court denied its admission because it was uncertified and contrary to Dopp's representation during the preceding four years that he owned the defendant property.

the forfeiture proceedings had been stayed. In response, Boehne acknowledged the March 23, 1998, reconveyance to Dopp, but now claimed, for the first time, that Dopp had quitclaimed the defendant property *back* to her on July 27, 2001, weeks after the close of the forfeiture trial, but just before she filed her motion to intervene. R. Vol. III, Doc. 116, at 4-5. This assertion is directly contrary to Dopp's affidavit, dated July 26, 1997, in which he testified that Boehne had owned the property since October 18, 1996, and that he had been unable to buy it back from her since the October 18, 1996 conveyance. *Id*., Doc. 103, Ex. B. Boehne did not record the July 27, 2001 quitclaim deed until September 10, 2001, the day before she filed her response.

The district court, after a thorough analysis of the procedural posture of Boehne's many claims and alleged conveyances, ruled that her claim was untimely filed. *Id*., Doc. 120, at 7. *See* Rule C(6) of the Supplemental Rules (requiring, under the version of the rule in place at the time this forfeiture case arose, that a claimant file a verified claim within ten days after process has been executed). For substantially the reasons set forth in the district court's November 29, 2001 order, we conclude the district court's ruling is both factually supported by the record, and legally correct. *See 51 Pieces of Real Prop.*, 17 F.3d at 1318 (noting that purpose of Rule C(6)'s time restriction is "to force claimants to come forward as soon as possible after forfeiture proceedings have been

initiated so that all interested parties can be heard and the dispute resolved without delay" (quotation omitted)). In light of Boehne's failure to file a timely claim, we need not address the remainder of her arguments on appeal.

The judgment of the district court is AFFIRMED. Dopp's motion to proceed before this court without prepayment of fees is GRANTED. The mandates shall issue forthwith.

Entered for the Court

Stephen H. Anderson
Circuit Judge