

# IN THE

# Indiana Supreme Court

Supreme Court Case No. 27S04-1702-MI-70

## State of Indiana,

*Appellant (Plaintiff)*



FILED

Oct 28 2019, 12:25 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

—v—

## Tyson Timbs,

*Appellee (Defendant)*

---

Argued: June 28, 2019 | Decided: October 28, 2019

Appeal from the Grant Superior Court, No. 27D01-1308-MI-92
The Honorable Jeffrey D. Todd, Judge

On Remand from the Supreme Court of the United States, No. 17-1091

---

### Opinion by Chief Justice Rush

Justices David, Massa, and Goff concur.
Justice Slaughter dissents with separate opinion.

**Rush, Chief Justice.**

Civil forfeiture of property is a powerful law-enforcement tool. It can be punitive and profitable: punitive for those whose property is confiscated; and profitable for the government, which takes ownership of the property.

When a civil forfeiture is even partly punitive, it implicates the Eighth Amendment's protection against excessive fines. And since that safeguard applies to the states through the Fourteenth Amendment, we now face two questions left open by the Supreme Court of the United States. First, how should courts determine whether a punitive, *in rem* forfeiture is an excessive fine? And second, would forfeiture of Tyson Timbs's vehicle be an excessive fine?

We answer the first question with an analytical framework similar to those of almost all courts to have addressed the issue. For the second question, we remand for the trial court to determine, based on that framework, whether Timbs has cleared the hurdle of establishing gross disproportionality, entitling him to relief.

# Facts and Procedural History

Tyson Timbs started taking prescription hydrocodone pills for foot pain in 2007. He soon became addicted and supplemented his prescription with pain pills he bought on the street. When those became unavailable, he turned to heroin.

Despite addiction treatment, Timbs continued to use; and when he failed a drug screen, he lost his job. He got clean for a while but began using again after his father died in 2012.

From his father's life insurance policy, Timbs received approximately $73,000. With about $42,000 of those proceeds, he purchased a Land Rover. He spent the rest on clothes, shoes, and heroin, with over $30,000 going to the drugs.

Timbs would obtain heroin by regularly driving his Land Rover sixty to ninety miles to meet his supplier. These trips accounted for most of the

16,000 miles Timbs put on the vehicle over four months. Eventually, a confidential informant told police officers on a drug task force that Timbs would possibly sell heroin. Timbs had never sold before, but the officers devised a controlled-buy plan.

The first buy took place on May 6, 2013, at an apartment near Timbs's residence. Timbs drove his Land Rover to the apartment, bringing two grams of heroin with him for the sale. At the apartment, Timbs gave the drugs to the confidential informant, and an undercover police officer gave Timbs the agreed-upon $225. Before Timbs departed in the Land Rover, the officer mentioned contacting Timbs for another sale.

About two weeks later, a second buy took place at a gas station close to Timbs's residence. Timbs arrived on foot with two grams of heroin, which he gave to an undercover officer for $160.

Over the next week, officers set up a third buy, which was to take place at a hotel. But the sale did not occur. Before Timbs arrived at the meeting place on the scheduled day, police stopped him in his Land Rover for a traffic violation. Officers immediately seized the vehicle and took Timbs and his passenger into custody. Neither individual had heroin with him in the vehicle. Without drugs for the sale, they had planned to drive off with the purchase money once the buyer handed it over.

The State charged Timbs with three offenses: two counts of Class B felony dealing in a controlled substance, Ind. Code § 35-48-4-2(a)(1) (2012); and one count of Class D felony conspiracy to commit theft, I.C. §§ 35-43-4-2(a), -41-5-2. The trial court found Timbs indigent and appointed a public defender for the criminal case.

After entering into a plea agreement, Timbs pleaded guilty to one count of dealing and the conspiracy charge, and the State dismissed the other count of dealing. The court sentenced Timbs according to the plea agreement's terms: the sentence for dealing—six years' imprisonment with five years suspended to probation and one year executed on home detention—would run concurrent with a lesser sentence for the conspiracy conviction. Also, as part of his sentence, Timbs was required to participate in a drug-and-alcohol program; pay the $400 program fee; reimburse the

drug task force $385 for the cost of its investigation; and pay $418 in court costs and other fees.

In addition to prosecuting the criminal case against Timbs, the State filed a civil complaint for forfeiture of the Land Rover, bringing the action against the property, or *in rem*, with Timbs as a named party in interest. In its complaint, the State alleged:

1. On or about May 31, 2013, officers of the . . . Drug Task Force, seized from the Defendant, TYSON TIMBS, One (1) 2012 Land Rover LR2 . . . in Grant County, Indiana.

2. On said date and at said place, the Defendant, TYSON TIMBS, had in his possession, the above described vehicle, said vehicle had been furnished or intended to be furnished by Defendant, TYSON TIMBS, in exchange for an act that is in violation of a criminal statute, or used to facilitate any violation of a criminal statute or is traceable as proceeds of the violation of a criminal statute under Indiana law, as provided in I.C. 34-24-1-1.

3. The Defendant, TYSON TIMBS, is the owner of the vehicle.

After a hearing, the court made factual findings and entered judgment in Timbs's favor. The court reasoned that forfeiture of the vehicle would be grossly disproportional to the gravity of Timbs's dealing offense—which carried a maximum statutory fine of $10,000 (about one-fourth the Land Rover's market value at the time Timbs purchased it five months earlier)—so the forfeiture would violate the Eighth Amendment's Excessive Fines Clause.

The State appealed, and our Court of Appeals affirmed. *State v. Timbs*, 62 N.E.3d 472, 473, 477 (Ind. Ct. App. 2016). We granted the State's petition to transfer and reversed. *State v. Timbs*, 84 N.E.3d 1179, 1180–81, 1185 (Ind. 2017). Without reaching the excessiveness question, we held

that the Excessive Fines Clause of the Eighth Amendment had not been incorporated against the States.[1] *Id.* at 1180–81.

Timbs petitioned the Supreme Court of the United States for certiorari. The Court granted his petition and held that the Excessive Fines Clause applies to the States through the Fourteenth Amendment. *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019). The Court accordingly vacated our prior decision and remanded the case back to us. *Id.* at 691.

We ordered additional briefing and oral argument and now address the merits of the constitutional issue.[2]

## Standard of Review

Timbs asserts that the statute under which the State sought forfeiture of the Land Rover is unconstitutional as applied to the facts of this case. His claim involves several layers of review.

We accept the trial court's factual findings unless they are clearly erroneous. Ind. Trial Rule 52(A); *Hitch v. State*, 51 N.E.3d 216, 226 (Ind. 2016). But we review the court's excessiveness decision de novo, as it requires application of a constitutional standard. *See United States v. Bajakajian*, 524 U.S. 321, 336–37 & n.10 (1998); *State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017). Finally, we presume the statute is constitutional and "resolve all reasonable doubts concerning [the] statute in favor of constitutionality." *Thakar*, 82 N.E.3d at 259 (quoting *Tiplick v. State*, 43 N.E.3d 1259, 1262 (Ind. 2015)).

---

[1] Timbs did not raise a claim under the Indiana Constitution. *See* Ind. Const. art. 1, § 16 ("Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense."). We are therefore unable to evaluate such a claim. *See generally* Jeffrey S. Sutton, 51 Imperfect Solutions: States and the Making of American Constitutional Law (2018).

[2] We thank all amici for their helpful briefs.

# Discussion and Decision

The Eighth Amendment guarantees that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. These guarantees "place 'parallel limitations' on 'the power of those entrusted with the criminal-law function of government.'" *Timbs*, 139 S. Ct. at 687 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 263 (1989)).

At issue is the Excessive Fines Clause, which applies only to fines, or "payment[s] to a sovereign as punishment for some offense." *Browning-Ferris*, 492 U.S. at 265. Because the Clause has received little attention in Supreme Court precedent, courts in recent decades have been grappling with the question of what makes an *in rem* fine excessive. We address that question today—finding guidance in cases from the Supreme Court, especially *Austin* and *Bajakajian*, and in the history of both the Excessive Fines Clause and forfeitures.

But first, we must determine whether forfeiture of Timbs's Land Rover is a fine, bringing it within the scope of the Excessive Fines Clause.

## I. Forfeiture of Timbs's vehicle is a fine.

The parties agree that forfeiture of Timbs's Land Rover is at least partly punitive, making it a fine subject to the Excessive Fines Clause. We also agree.

The State sought forfeiture of the Land Rover under Indiana Code section 34-24-1-1(a)(1)(A). This statute authorizes use-based forfeitures—forfeitures based on the property's use in a crime—of vehicles used in the commission of certain drug offenses. Specifically, the statute states that "[a]ll vehicles" may be seized for forfeiture "if they are used or are intended for use by the person or persons in possession of them to transport or in any manner to facilitate the transportation of . . . [a] controlled substance for the purpose of committing, attempting to commit, or conspiring to commit any of" the listed drug offenses. I.C. § 34-24-1-1(a)(1) (2012 & Supp. 2013).

The question is whether a use-based forfeiture authorized by this statute is punitive and thus a fine. In *Austin v. United States*, the Supreme Court set out a way to answer that question. 509 U.S. 602 (1993). There, the Government sought forfeiture—under two statutory provisions—of a mobile home and auto shop, based on the property's use to commit or facilitate a federal drug offense. *Id.* at 604–05, 605 n.1, 620 (forfeiture under 21 U.S.C. §§ 881(a)(4), (7) (1988)). The Court concluded that such a forfeiture was at least partially punitive, bringing it within the ambit of the Excessive Fines Clause. *Id.* at 621–22.

In reaching this conclusion, the Court took a categorical approach, asking whether the two statutory provisions, "as a whole," served a punitive purpose. *Id.* at 622 n.14; *see United States v. Ursery*, 518 U.S. 267, 287 (1996) (noting that *Austin*'s approach is "wholly distinct from" a case-by-case analysis). The Court found that they did for two key reasons: first, the provisions focused on the owner's involvement in a crime (by linking the forfeiture to specific offenses and by including an "innocent owner" defense); and second, the value of the forfeitable property bore no relationship to reparative costs. *Austin*, 509 U.S. at 619–22. Thus, forfeitures under the two provisions were fines. *Id.* at 622. And it did not matter whether, in some cases, forfeitures under the provisions would be purely remedial. *Id.* at 622 n.14. The Court's categorical analysis would still identify those forfeitures as fines, though their entirely remedial character would make them not excessive. *Id.*

Like the provisions in *Austin*, Indiana Code section 34-24-1-1(a)(1)(A) is punitive by design. The statute focuses on the owner's involvement in a crime—as it ties each forfeiture to the commission of a drug offense, and an accompanying "innocent owner" provision guards against forfeiting vehicles from owners who are uninvolved in the underlying offense. *See* I.C. § 34-24-1-4(a); *cf. Austin*, 509 U.S. at 619–20. Also, the value of the forfeiture is neither a fixed sum nor linked to the harm caused by the underlying crime; the vehicles' values "can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Austin*, 509 U.S. at 622 n.14. Unsurprisingly, then, the State acknowledged at oral argument that the statute has punitive as well as remedial functions.

Thus, forfeitures under Section 1(a)(1)(A) are fines to which the Excessive Fines Clause applies. Because forfeiture of Timbs's Land Rover is such a fine, we now turn to the contours of the protection against excessiveness.

## II. When is a use-based *in rem* fine excessive?

The parties disagree about how to measure excessiveness.

The State argues that the excessiveness of an *in rem* fine turns on a single determination: if the property was an instrument of crime, then its forfeiture is not excessive—full stop.[3] The State reasons that, given the history of *in rem* forfeitures, the Excessive Fines Clause "requires only that the property forfeited be a genuine criminal instrumentality." State's Opening Br. at 11.

Timbs urges us to recognize that the Excessive Fines Clause includes both an instrumentality limitation and a proportionality limitation. He says analyzing excessiveness entails two main questions. Was the property instrumental in the underlying crime? And, if so, would the property's forfeiture be grossly disproportional to the gravity of the offense? Timbs asserts that these inquiries focus on several considerations—how closely the property and predicate offense are linked; the claimant's blameworthiness; and the harshness of the forfeiture's effects. He maintains, though, that an excessiveness determination is "factually intensive," making "a one-size-fits-all test or a weighting for the factors" inappropriate. Timbs's Opening Br. at 16 (quoting *United States v. 829 Calle de Madero*, 100 F.3d 734, 738 (10th Cir. 1996)).

To understand and resolve the disagreement over the appropriate measure of excessiveness, we first review Supreme Court guidance in *Austin* and *Bajakajian*.

---

[3] This argument differs from the State's position prior to the U.S. Supreme Court's grant of certiorari. When the case was last before us, the State agreed with Timbs that the excessiveness inquiry includes a proportionality assessment.

## A. Supreme Court precedent provides guideposts.

In *Austin*, the Court recognized that the Excessive Fines Clause applies to some *in rem* forfeitures, given those forfeitures' punitive nature. 509 U.S. at 621–22. In doing so, *Austin* confirmed that, even if *in rem* forfeitures were not historically deemed fines (thus placing them beyond the Excessive Fines Clause), they were understood, at least in part, as punishments. *Id.* at 618. Likewise, *in rem* forfeitures today may be punitive. So, after *Austin*, historical legal fictions behind traditional *in rem* forfeitures do not prevent courts from recognizing when a modern *in rem* forfeiture is a fine. *See id.* at 621–22.

But *Austin* did not prescribe how to determine the **excessiveness** of *in rem* fines. *Id.* at 622–23. It instead left that question to the lower courts, emphasizing that its decision "in no way limits" consideration of multiple factors in addition to whether the confiscated property has a close enough relationship to the offense. *Id.* at 623 n.15.

Five years after *Austin*, the Court in *Bajakajian* supplied a method for determining the excessiveness of an *in personam* fine—a punitive forfeiture obtained through an action against a person rather than against the property itself. *United States v. Bajakajian*, 524 U.S. 321, 336–37 (1998). There, the Court recognized that the principle of proportionality between crime and punishment is central to whether a fine is unconstitutional under the Excessive Fines Clause. *Id.* at 334 (citing *Austin*, 509 U.S. at 622–23 and *Alexander v. United States*, 509 U.S. 544, 559 (1993)). And to determine whether certain forfeitures are excessive fines, a gross-disproportionality standard, as opposed to a strict-proportionality one, is appropriate. *Id.* at 336. Though *Bajakajian* did not concern an *in rem* forfeiture, portions of its reasoning extend to modern *in rem* fines as well. *Id.* at 331 n.6, 334–37.

In *Bajakajian*, the forfeiture was based on a defendant's conviction for failing to report that he was transporting over $10,000 in currency out of the United States. *Id.* at 325. The Government sought forfeiture of the $357,144 that the defendant failed to declare. *Id.*

The Court observed that the forfeiture was a fine—it derived from the historical tradition of punitive, criminal forfeitures and was designed to punish the offender. *Id.* at 331–33. This punitive identity, the Court explained, made the forfeiture differ from traditional *in rem* forfeitures, which were considered nonpunitive and thus not fines. *Id*. But the Court noted, referencing *Austin*, that some modern *in rem* forfeitures **are** punitive. *Id.* at 331 n.6 (citing 509 U.S. at 621–22).

The Court then turned to the measure of excessiveness and determined that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." *Id.* at 334. In reaching this determination, the Court looked to the text and history of the Excessive Fines Clause and acknowledged, by citing *Austin*, that the centrality of proportionality under the Clause applies to both *in personam* and *in rem* fines. *See id.* at 334–35 (citing 509 U.S. at 622–23). The Court explained, though, that because the *in personam* forfeiture of the currency did not derive from a certain tradition of *in rem* forfeitures—one based on the property's instrumental use in a crime—it was "irrelevant" whether the currency was an instrumentality, leaving proportionality as the sole determination for excessiveness. *Id.* at 333–34.

For the required level of proportionality, the Court supplied two main reasons for adopting gross disproportionality—instead of strict proportionality—as the appropriate measure of excessiveness: first, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature"; and second, "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Id.* at 336.

Applying the gross-disproportionality standard, the Court considered multiple factors. To start, the defendant's offense was "solely a reporting offense" that was "unrelated to any other illegal activities." *Id.* at 337–38. Next, the defendant did "not fit into the class of persons for whom the [criminal] statute was principally designed," as he was not a money launderer, drug trafficker, or tax evader. *Id.* at 338. Furthermore, the maximum sentence the defendant could receive under the Federal Sentencing Guidelines (six months' imprisonment and a $5,000 fine)

confirmed "a minimal level of culpability," in part because that sentence was "but a fraction" of the maximum statutory penalty (five years' imprisonment and a $250,000 fine). *Id.* at 338–39, 339 n.14. And finally, the harm from the defendant's crime was minimal. *Id.* at 339.

Based on these factors, the Court concluded that the forfeiture of $357,144 would be "grossly disproportional" and thus constitutionally excessive. *Id.* at 339–40.

Mindful of these Supreme Court decisions, we now evaluate the parties' arguments and provide a framework for determining whether forfeiture of Timbs's vehicle would be excessive.

## B.   We reject the State's instrumentality-only test.

The State's position—that the excessiveness of a use-based *in rem* fine turns solely on whether the property was used in a crime—has found practically no traction among federal circuit and state supreme courts.

Rather, courts deciding this issue have almost uniformly held that the Excessive Fines Clause includes a proportionality limitation. *See, e.g.,* *United States v. Ferro*, 681 F.3d 1105, 1115 (9th Cir. 2012); *von Hofe v. United States*, 492 F.3d 175, 184 (2d Cir. 2007); *United States v. Dodge Caravan Grand SE/Sport Van*, 387 F.3d 758, 762–63 (8th Cir. 2004); *United States v. 45 Claremont St.*, 395 F.3d 1, 6 (1st Cir. 2004) (per curiam); *United States v. Wagoner Cty. Real Estate*, 278 F.3d 1091, 1100 n.7, 1101 n.8 (10th Cir. 2002); *United States v. 817 N.E. 29th Dr.*, 175 F.3d 1304, 1309–10 (11th Cir. 1999); *Yskamp v. DEA*, 163 F.3d 767, 773 (3d Cir. 1998); *United States v. 415 E. Mitchell Ave.*, 149 F.3d 472, 477 (6th Cir. 1998).

And although the Fourth Circuit adopted a multi-factored "instrumentality test" that the South Carolina Supreme Court appropriated, even that test looks beyond the relationship between the property and the offense. *See United States v. Chandler*, 36 F.3d 358, 365 (4th Cir. 1994) (considering "the role and culpability of the owner"); *Medlock v.*

*One 1985 Jeep Cherokee*, 470 S.E.2d 373, 377 (S.C. 1996).[4] The State points to no other federal circuit or state supreme court cases—and we have found none—that exclude a proportionality test from the excessiveness inquiry.

While courts' excessiveness inquiries vary in structure, the vast majority focus on common considerations—like the nexus between the property and the offense, the gravity of the offense, the harshness of the penalty, and the claimant's culpability. *See, e.g.*, *Commonwealth v. 1997 Chevrolet*, 160 A.3d 153, 190–92 (Pa. 2017); *Stuart v. State Dep't of Safety*, 963 S.W.2d 28, 35–36 (Tenn. 1998).

Also finding these considerations integral to the excessiveness inquiry, we hold that the Excessive Fines Clause includes both an instrumentality limitation and a proportionality one for use-based *in rem* fines. Specifically, to stay within the bounds of the Excessive Fines Clause, a use-based fine must meet two requirements: (1) the property must be the actual means by which an underlying offense was committed; and (2) the harshness of the forfeiture penalty must not be grossly disproportional to the gravity of the offense and the claimant's culpability for the property's misuse.

For an as-applied constitutional challenge like Timbs's, this excessiveness inquiry arises in a specific procedural context. The State must first establish that the property is forfeitable under a statute; Indiana forfeiture statutes require the State to make this showing by a preponderance of the evidence.[5] *See* I.C. § 34-24-1-4(a). If the State carries

---

[4] Though the Fourth Circuit's *Chandler* decision has not been overruled, it has been called into doubt. *Compare United States v. Brunk*, 11 F. App'x 147, 148 (4th Cir. 2001) (per curiam), *with United States v. Ahmad*, 213 F.3d 805, 815 (4th Cir. 2000), *and United States v. 300 Blue Heron Farm Lane*, 115 F. Supp. 2d 525, 527 (D. Md. 2000).

[5] The preponderance standard reflects a distinction between civil and criminal matters. *See generally Ursery*, 518 U.S. 267. We recognize, though, that the punitive nature of some *in rem* proceedings may require us to confront—at some point—questions about whether the procedural requirements of *in rem* forfeitures comport with due process or other constitutional guarantees. *Cf. Dept. of Law Enf't v. Real Prop. Owned and/or Possessed by Chilinski*, 588 So.2d 957, 967–68 (Fla. 1991) (due process and jury trial); *State v. Items of Real Prop.*, 383 P.3d 236, 243–45 (Mont. 2016) (jury trial); *State v. Nunez*, 2 P.3d 264, 291–92 (N.M. 1999) (due process). *See generally One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700 (1965) ("[A] forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to

this burden,[6] then the property is forfeitable unless the claimant overcomes the presumption that the statute is constitutional. For an as-applied challenge, the claimant must show the statute is unconstitutional as applied to the particular case, establishing the relevant facts by a preponderance of the evidence.

We detail in our analysis below how a court should determine whether the claimant has carried this burden. But ultimately, to establish that the statute is unconstitutional as applied under the Excessive Fines Clause, the claimant must demonstrate—for a use-based forfeiture—that the forfeiture is a fine that exceeds the Clause's instrumentality and proportionality limitations and thus, "in justice[,] the punishment is more criminal than the crime." *829 Calle de Madero*, 100 F.3d at 738 (quoting *United States v. Sarbello*, 985 F.2d 716, 724 (3d Cir. 1993)). In short, the claimant must show either that the property was not an instrumentality or, if the property was an instrumentality, that the fine would be grossly disproportional.

Timbs does not argue that the State failed to carry its burden in establishing the Land Rover's forfeitability under Section 1(a)(1)(A). He rather argues that the statute is unconstitutional as applied to the facts of this case. So, we now turn to the two parts of our excessiveness analysis.

## C. Excessiveness depends on instrumentality and proportionality.

We take each excessiveness limitation in turn. We first explain why a use-based fine is excessive when the property was not an instrumentality

---

penalize for the commission of an offense against the law."); *United States v. The Brig Burdett*, 34 U.S. (9 Pet.) 682, 691 (1835) ("No individual should be punished for a violation of law which inflicts a forfeiture of property, unless the offence shall be established beyond reasonable doubt."). We do not confront such issues here, as neither party has argued them.

[6] Many jurisdictions impose comparable burdens, though some state statutes impose more stringent requirements on the government. *Compare* 18 U.S.C. § 983(c) (2018), *and $15,956 in U.S. Currency v. State*, 233 S.W.3d 598, 601–02, 604 (Ark. 2006), *and People ex rel. Hartrich v. 2010 Harley-Davidson*, 104 N.E.3d 1179, 1188 (Ill. 2018), *with* Cal. Health & Safety Code §§ 11488.4(i)(1), (2),(4), 11488.5(d) (West 2017), *and* Mich. Comp. Laws § 333.7521(2) (2016).

of the underlying offenses. We then explain why the Excessive Fines Clause includes a proportionality limitation, and we outline its contours.

### 1. A use-based fine is excessive if the property was not an instrumentality of the underlying crimes.

The State and Timbs agree that the Excessive Fines Clause requires the property of a use-based *in rem* fine to be a criminal instrumentality. We also agree. We arrive at this conclusion based on the history of *in rem* and *in personam* forfeitures.

The tradition of civil *in rem* forfeitures "tracks the tainted-untainted line." *Luis v. United States*, 136 S. Ct. 1083, 1100 (2016) (Thomas, J., concurring in judgment). In that tradition, assets have been historically forfeitable either because they are "tainted" as fruits or instrumentalities of crime, or because they are proportional to the tainted property's value. *See Bajakajian*, 524 U.S. at 329–30, 340–41; *id.* at 345–46, 352 (Kennedy, J., dissenting); *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 121 & n.15 (1993) (plurality opinion). By contrast, *in personam* forfeitures have been historically predicated on the defendant's conviction for a criminal offense. *See Bajakajian*, 524 U.S. at 332; *Austin*, 509 U.S. at 612–13; *Ursery*, 518 U.S. at 294 (Kennedy, J., concurring). Because the historical basis for an *in rem* forfeiture is the property's "taint" as a fruit or instrumentality of crime, we hold that an *in rem* fine lacking that basis is excessive.[7]

Here, the State sought forfeiture of Timbs's Land Rover based on its "taint" from its use in crime. The fine is thus excessive if the vehicle is not "tainted" as a criminal instrumentality—which depends on two questions. First, in what crimes must the property have been instrumental? And second, under what circumstances does the property's involvement in

---

[7] We note that, when property is tainted because it is a fruit of crime (versus a criminal instrumentality), it may not be a fine. For example, forfeiture of criminal proceeds may be entirely remedial—not at all punitive—and so outside the scope of the Excessive Fines Clause. *See, e.g.*, *United States v. Berryhill Farm Estates*, 128 F.3d 1386, 1395–96 (10th Cir. 1997); *United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir. 1994). The property in question here, however, was not the fruit of a criminal enterprise, as Timbs purchased the Land Rover with lawful funds from his father's life insurance policy.

those crimes render it an instrumentality? We take each question in turn, applying it to the facts of Timbs's case.

### a. The relevant crimes are those on which the State bases its forfeiture case.

Given that the foundation for an *in rem* forfeiture is the property's "taint" from crime, we hold that the relevant crimes for the instrumentality inquiry are those on which the State bases its forfeiture case. *Cf. United States v. 427 & 429 Hall St.*, 74 F.3d 1165, 1169 (11th Cir. 1996). This principle is reflected in the challenged forfeiture statute, which requires the State to establish the crimes in which the property was "used or . . . intended for use." I.C. § 34-24-1-1(a)(1).

As explained later, other related criminal conduct may affect the **proportionality** portion of the excessiveness analysis; but the **instrumentality** portion focuses solely on the crimes the government establishes to prove the property was used in a crime. This is roughly analogous to an *in personam* excessiveness analysis, in which related criminal conduct may affect the proportionality determination, but the foundation for the *in personam* forfeiture depends on the defendant's conviction for certain crimes—the crimes the government charged, prosecuted, and proved.

The State and Timbs disagree about which crimes are relevant for the instrumentality inquiry. The State argues that Timbs's repeated possession and dealing of heroin—multiple offenses listed under Section 1(a)(1)(A)— are relevant to whether the Land Rover is a criminal instrumentality. Timbs maintains that the State conceded at oral argument that the predicate offense was only the first controlled buy.

Had the State not conceded that it based its forfeiture case on only one offense, we may have had to decide whether the State based its forfeiture

case on multiple drug offenses listed under Section 1(a)(1)(A).[8] But Timbs is right about the State's concession that it based the forfeiture case solely on the dealing that occurred on May 6—the only deal he drove to. We therefore treat this single offense as the predicate crime on which the State's forfeiture case—and thus the instrumentality inquiry—depends.

We accordingly move on to the next instrumentality inquiry: did the Land Rover's involvement in the May 6 dealing offense render it an instrumentality of that crime?

### b. Property is an instrumentality if it was the actual means by which an underlying crime was committed.

The historical foundation of *in rem* forfeitures places a limit on what property qualifies as an "instrumentality." *See Bajakajian*, 524 U.S. at 333 n.8. Specifically, property is a criminal instrumentality only if "it was the actual means by which an offense was committed." *Id.* Thus, a claimant may establish excessiveness by showing that the property was not the actual means by which any of the crimes on which the government based its case were committed. Importantly, this instrumentality requirement is constitutional and independent of the statutory requirements for forfeiture.[9]

Supreme Court opinions offer illustrative guidance on what does—and does not—meet the actual-means requirement. For example, for an offense of removing, depositing, or concealing goods to avoid taxes, a vehicle

---

[8] While the State must provide sufficient notice to the claimant, a case for forfeiture under Section 1(a)(1)(A) may rest on any of the crimes listed in that provision. *See generally KS&E Sports v. Runnels*, 72 N.E.3d 892, 901 (Ind. 2017); Fed. R. Civ. P. Supp. R. E(2)(a); *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002). Here, the State's forfeiture complaint and presentation of evidence may have predicated the forfeiture case on the Land Rover's use to commit multiple possession and dealing offenses. And Timbs does not contend that the State's pleading was insufficient or that the State failed to present adequate evidence that the vehicle was used to possess a narcotic drug, *see* I.C. § 34-24-1-1(a)(1)(A)(viii).

[9] The State asserts that the forfeiture statute supplies the measure of instrumentality. In other words, that if the statutory conditions are met, so, too, is the constitutional instrumentality requirement. We disagree. Forfeiture statutes may include a requirement mirroring the constitutional instrumentality limit, but the Excessive Fines Clause's actual-means restriction stands independent of statutory requirements for use-based forfeitures.

used to transport and conceal the goods would be an instrumentality. *Id.* at 334 n.9 (citing *J.W. Goldsmith, Jr.–Grant Co. v. United States*, 254 U.S. 505, 508 (1921)). Similarly, for an unlawful drug sale, scales used to measure out the drugs would be an instrumentality. *Austin*, 509 U.S. at 627–28 (Scalia, J., concurring in part and in the judgment).

In contrast, the mere presence of property in a crime does not make the property an instrumentality. *See, e.g.*, *Bajakajian*, 524 U.S. at 334 n.9 (acknowledging that while certain property may satisfy a precondition to an offense's commission, that fact alone may not make the property an instrumentality). And for property that is divisible, it may be that only part of the property was the actual means by which a crime was committed. *See id.* at 333 n.8; *cf.* Rufus Waples, A Treatise on Proceedings in Rem 252 (1882) ("If only one acre of a tract of land containing a hundred acres[] is used in contravention of law, only that acre can be rightfully condemned.").

Timbs argues that the Land Rover was not instrumental in the May 6 dealing offense because the vehicle "had only an 'incidental and fortuitous' link" to the crime. Timbs Opening Br. at 17 (quoting *1997 Chevrolet*, 160 A.3d at 185). He reasons that, although he drove the vehicle to the drug sale, it was just a five-minute drive from his residence. He also reasons that the vehicle is much like a building in which an isolated drug sale happens to occur—because the vehicle was no more instrumental to the drug sale than the apartment in which the sale took place. *Id.* at 17 (citing *Austin*, 509 U.S. at 628 (Scalia, J., concurring in part and in the judgment)).

We disagree that the Land Rover was not the actual means by which the dealing offense was committed. It is true that the distance Timbs drove to the sale may have been short, and perhaps Timbs could have walked. But he used the vehicle not only to get himself and the drugs to the location where the deal would take place, but also to obtain the drugs for the sale.

In sum, the Land Rover was the actual means by which the predicate crime was committed, making the vehicle an instrumentality. And so, its

forfeiture falls within the Excessive Fines Clause's instrumentality limit for use-based fines.

The State argues that this is the end of the excessiveness inquiry. As mentioned earlier, we disagree and join the many courts recognizing that the Excessive Fines Clause also includes a proportionality limitation. Before elaborating on the proportionality test for use-based fines, though, we first explain why we reject the State's argument that we should confine the excessiveness inquiry to an instrumentality test alone.

## 2. The Excessive Fines Clause imposes a proportionality limitation on punitive instrumentality forfeitures.

In arguing that excessiveness depends only on whether the property is a criminal instrumentality, the State relies on history: for hundreds of years, no court applied a proportionality requirement to any *in rem* forfeiture. So, the State concludes that "there is no historical grounding" to recognize a proportionality limitation alongside the instrumentality one. Oral Argument at 10:57–11:01, *State v. Timbs* (June 28, 2019), https://perma.cc/B57E-H5JC.

We agree with the State that we should "look at the historical roots of *in rem* forfeiture[] . . . as a guide" for determining excessiveness. *Id.* at 11:20. But in doing so, we will not ignore how far removed today's *in rem* forfeitures are from their traditional roots. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 82 (1993) (Thomas, J., concurring in part and dissenting in part) (recognizing that the modern *in rem* forfeiture practice under a federal drug-abuse forfeiture statute "appears to be far removed from the legal fiction upon which the civil forfeiture doctrine is based"). "[A]mbitious modern statutes and prosecutorial practices have all but detached themselves from the ancient notion of civil forfeiture." *Id.* at 85.

Indeed, the way Indiana carries out civil forfeitures is both concerning, *see Horner v. Curry*, 125 N.E.3d 584, 612 (Ind. 2019) (Slaughter, J., concurring in the judgment), and symptomatic of a shift in *in rem* forfeiture law and practice. *See also Leonard v. Texas*, 137 S. Ct. 847, 849

(2017) (Thomas, J., respecting denial of certiorari) (observing differences between traditional and modern *in rem* forfeiture practices). *Compare Bajakajian*, 524 U.S. at 333 (observing that *in rem* forfeitures were traditionally considered nonpunitive), *with Austin*, 509 U.S. at 621–22 (acknowledging that *in rem* forfeiture may be—and sometimes is—punitive).

Recognizing this departure, we conclude that the Excessive Fines Clause places not only an instrumentality limit on use-based fines, but also a proportionality one. We reach this conclusion based on the text and history of the Excessive Fines Clause, the history of *in rem* forfeitures, and Supreme Court precedent.

### a. The text and history of the Excessive Fines Clause favor proportionality.

The text and history of the Excessive Fines Clause run counter to the State's instrumentality-only test.

The text of the Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Cont. amend. VIII. The word "[e]xcessive means surpassing the usual, the proper, or a normal measure of proportion." *Bajakajian*, 524 U.S. at 335 (citing dictionary definitions). Thus, the text contemplates some measure of proportionality.

So does its history. The Clause's precursor in the English Bill of Rights sought to protect against penalties that were exorbitant and out of proportion with the punished person's wrongdoing. *Id.* The provision also reaffirmed Magna Carta's guarantee that "[a] Free-man shall not be amerced for a small fault, but after the manner of the fault; and for a great fault after the greatness thereof, saving to him his contenement"—a guarantee that "required that economic sanctions 'be proportioned to the wrong' and 'not be so large as to deprive [an offender] of his livelihood.'" *Timbs*, 139 S. Ct. at 687–88 (alterations in original) (first quoting Magna Carta, § 20, 9 Hen. III, ch. 14, in 1 Eng. Stat. at Large 5 (1225); then quoting *Browning-Ferris*, 492 U.S. at 271).

The Court in *Bajakajian* accordingly reasoned that "[t]he text and history of the Excessive Fines Clause demonstrate the centrality of proportionality to the excessiveness inquiry." 524 U.S. at 335. Although the Court was analyzing an *in personam* forfeiture, the text and history of the Excessive Fines Clause apply to both *in personam* and punitive *in rem* forfeitures. *See generally Timbs*, 139 S. Ct. at 686–91 (observing that the right guaranteed by the Excessive Fines Clause is deeply rooted). Thus, proportionality is central to the excessiveness inquiry not only for *in personam* forfeitures but also for punitive *in rem* forfeitures. *See Bajakajian*, 524 U.S. at 334 (citing *Austin*, 509 U.S. at 622–23).

This leads us to another reason we reject the State's instrumentality-only test: the history of *in rem* forfeitures does not limit the excessiveness inquiry as the State contends.

### b. The history of traditional *in rem* forfeitures does not exclude a proportionality limit.

The history of *in rem* forfeitures does not justify omitting proportionality from the excessiveness analysis. The primary reason is that the "guilty property" fiction behind traditional *in rem* forfeitures no longer shields *in rem* forfeitures from review for excessiveness.

Early United States statutes authorized forfeiture of property linked to various legal transgressions. *See, e.g.*, 1 Stat. 137, § 3 (1790) (trade with native peoples); 1 Stat. 199, § 10 (1791) (transporting distilled spirits); 1 Stat. 347, § 1 (1794) (slave trade); 1 Stat. 369, § 2 (1794) (arms exports); 1 Stat. 381, § 3 (1794) (war neutrality). Stylizing these statutory forfeitures *in rem* rather than *in personam* was sometimes necessary to enforce the law—because the person responsible for a violation was not always within the personal jurisdiction of the United States. *See Austin*, 509 U.S. at 615–16 n.9 ("The fictions of *in rem* forfeiture were developed primarily to expand the reach of the courts." (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 87 (1992))). In those cases, bringing a forfeiture action against the property was "the only adequate means of suppressing the offence or wrong." *Harmony v. United States*, 43 U.S. (2 How.) 210, 233 (1844).

Because *in rem* actions were brought against the property, "the conduct of the property owner was irrelevant" in the sense that—even when the responsible party was within jurisdictional reach—the property could be forfeited without the owner having violated the law. *Bajakajian*, 524 U.S. at 330; *see, e.g., Origet v. United States*, 125 U.S. 240, 246 (1888); *Harmony*, 43 U.S. (2 How.) at 233; *The Palmyra*, 25 U.S. (12 Wheat.) 1, 14–15 (1827). Nevertheless, the owner's culpability may have played a role in whether the property could be forfeited. *See Austin*, 509 U.S. at 616–17.

The Supreme Court often explained traditional *in rem* forfeitures using a "guilty property" fiction—that the inanimate property itself was guilty of the offense. *Id.* at 616. This fiction accurately reflected two distinctive features of *in rem* forfeitures: first, the actions focused on the property's relationship to the legal transgression (that is, the property's taint from a violation); and second, the forfeitures were not conditioned on the owner having been convicted for the transgression. *See, e.g., Origet*, 125 U.S. at 245–46; *Palmyra*, 25 U.S. (12 Wheat.) at 14–15; *The Meteor*, 17 F. Cas. 178, 181–82 (C.C.S.D.N.Y. 1866) (No. 9498).

But as venerable as the "guilty property" fiction was, it may have contributed to a false classification of all *in rem* forfeitures as "nonpunitive" and thus, "outside the domain of the Excessive Fines Clause." *Bajakajian*, 524 U.S. at 331. While some *in rem* forfeitures may have been nonpunitive, many went beyond remedying the harm done, punishing owners for the lawbreaking. *See, e.g.*, 1 Stat. 384 § 18 (1794) (authorizing forfeiture—as a consequence for unshipped sugar and snuff dispatched for export—of unshipped property, ships, guns, furniture, ammunition, tackle, and apparel). Indeed, the Supreme Court recognized that the *in rem* forfeiture procedure was at times "a highly penal one," requiring the government to establish "the infractions of the law . . . beyond reasonable doubt." *United States v. The Brig Burdett*, 34 U.S. (9 Pet.) 682, 690 (1835); *see also The Emily & the Caroline*, 22 U.S. (9 Wheat.) 381, 389 (1824).

Thus, regardless of their classification, *in rem* forfeitures were ultimately understood, at least in part, as punishment. *Austin*, 509 U.S. at 618. And, although a blanket "nonpunitive" classification may have

shielded traditional *in rem* forfeitures from constitutional excessiveness review—by designating all *in rem* forfeitures as not fines—this is no longer the case. *Austin* confirmed that shift.

Adding to the removal of the guilty-property fiction as a barrier to excessiveness review, expansion of *in rem* practices has ushered the excessiveness question into judicial view. Procedural safeguards may have tempered traditional *in rem* forfeitures and insulated them from constitutional challenge. *See, e.g.*, *Burdett*, 34 U.S. (9 Pet.) at 690; *Emily*, 22 U.S. (9 Wheat.) at 389. *See generally* Kevin Arlyck, *The Founders' Forfeiture*, 119 Colum. L. Rev. (forthcoming 2019). But in recent decades, the absence of certain shields against the oppressive use of civil forfeiture has encouraged the widened use of aggressive *in rem* forfeiture practices— which, in turn, has sparked criticism. *See Leonard*, 137 S. Ct. at 848 (Thomas, J., respecting denial of certiorari); *Sargent v. State*, 27 N.E.3d 729, 735 (Ind. 2015) (Massa, J., dissenting) (noting that forfeiture practices "are not without their critics, and their misuse invites further scrutiny"). *See generally Timbs*, 139 S. Ct. at 688–89 (observing the potential of fines to be used for retaliating against or chilling speech and for raising revenue apart from generally applicable taxes).

As a result of these changes in the law and practice surrounding *in rem* forfeitures, the question we face concerning the excessiveness of *in rem* fines is a new one—one that traditional *in rem* forfeitures did not prompt and that the Supreme Court did not answer. Thus, the history of *in rem* forfeitures does not establish that an instrumentality-only test is appropriate for today's use-based fines.

Despite the text and history we've just addressed, the State maintains that the Excessive Fines Clause either does not apply to *in rem* forfeitures at all or requires only that the property forfeited be a criminal instrumentality. The State acknowledges that *Austin* precludes the first of these positions. And we recognize that the second position creates tension with both *Austin* and *Bajakajian*—which is the final reason we reject the State's instrumentality-only test.

### c. The State's instrumentality-only test would create tension with Supreme Court precedent.

Both *Austin* and *Bajakajian* recognized that some *in rem* forfeitures punish property owners and are thus fines within the scope of the Excessive Fines Clause. *Austin*, 509 U.S. at 621–22; *Bajakajian*, 524 U.S. at 333 n.8. *Bajakajian* further recognized that proportionality (which involves consideration of the claimant's culpability) is central to constitutionality under the Clause. 524 U.S. at 334. And the Court hinged its reasoning largely on the punitive nature of *in personam* forfeitures—a punitive nature that also exists in *in rem* fines. *See id.* at 330–34, 331 n.6. Accordingly, the State's instrumentality-only test for *in rem* fines would create tension with these cases by excluding the claimant's culpability—and other components of proportionality—from the excessiveness inquiry.

We see this tension most clearly in the case of a blameless owner. The Supreme Court has left open the question of whether the Excessive Fines Clause prohibits punitive forfeitures of property from innocent owners. *Cf. Austin*, 509 U.S. at 616–17, 617 n.10. So, it may be that (1) forfeiting an innocent owner's lawfully owned property punishes the owner; and (2) if the owner is completely blameless for the property's criminal "taint," the forfeiture is necessarily excessive—because it punishes someone who has done nothing wrong. And while we don't need to answer the innocent-owner inquiry (because Timbs is not an innocent owner), the State's test would close the door to that question by dictating an answer: regardless of the owner's blameworthiness, the forfeiture would never be excessive so long as the property was instrumental in a crime.[10]

Ultimately, what flows from *Austin* and *Bajakajian* is this: the claimant's culpability is a consideration in analyzing the excessiveness of an *in rem* fine. While the basis for the forfeiture is the property's misuse, the

---

[10] In defending its test, the State reasons that statutes provide innocent-owner defenses and that the public would not stand for legislation authorizing forfeiture of a vehicle for an offense as minor as speeding. These assurances, even if accurate, are beside the point. *See* I.C. §§ 34-24-1-1(e), -4(a) (providing an "innocent owner" provision only when the property is a vehicle). The question is not whether blameless owners have any protection against forfeiture when someone else has misused their property. It is whether the Excessive Fines Clause certainly does not supply such a safeguard.

punishment is imposed on the claimant, whose property becomes the government's and whom the Excessive Fines Clause protects.

For these reasons, we disagree with the State that excessiveness depends solely on whether the property was an instrumentality; it depends also on proportionality.

### 3. An instrumentality forfeiture is excessive if—based on the totality of the circumstances—the harshness of the punishment is grossly disproportional to the gravity of the offenses and the claimant's culpability.

Most courts addressing the excessiveness of *in rem* fines have followed *Bajakajian* in applying a gross-disproportionality standard—versus another standard like strict proportionality. We likewise find a gross-disproportionality standard appropriate.

The logic behind *Bajakajian*'s adoption of the gross-proportionality measure for *in personam* forfeitures applies to *in rem* fines as well. After all, much like *in personam* forfeitures, *in rem* fines are "punishment for some offense," *Browning-Ferris*, 492 U.S. at 265, so any standard of proportionality implicates the relationship between the crime and the punishment's magnitude. And for *in rem* fines, gross disproportionality is the appropriate measure because, as with *in personam* forfeitures, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature" and "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Bajakajian*, 524 U.S. at 336.

Thus, we hold that gross disproportionality—not strict proportionality—is the appropriate standard for assessing whether an *in rem* instrumentality forfeiture is excessive. However, two key differences between *in rem* and *in personam* forfeitures warrant two corresponding differences in their respective proportionality tests.

First, *in personam* forfeitures concern defendants who have been found guilty of committing an underlying crime; so the underlying conviction

has established their culpability and the extent of their involvement in the crime. By contrast, *in rem* forfeitures concern owners who may not have committed the underlying crime; and thus, their culpability and extent of involvement in the crime have not been previously established by a conviction that serves as the basis for the forfeiture. For this reason, while the gross-disproportionality inquiry for *in personam* forfeitures considers "the gravity of the defendant's offense," *id.* at 337, the inquiry for punitive *in rem* forfeitures considers the gravity of the predicate offenses **and** the owner's culpability for the property's use in that criminal enterprise.

Second, an *in rem* forfeiture may be substantially remedial in nature, contrasting with an *in personam* forfeiture that "serves no remedial purpose," *id.* at 332. Thus, whereas the gross-disproportionality inquiry for *in personam* forfeitures considers the **whole amount** of the forfeiture, *id.* at 336–37, the inquiry for *in rem* forfeitures focuses precisely on the harshness of the **punishment** that the forfeiture imposes.

In sum, the proportionality limitation for use-based *in rem* fines is this: based on the totality of the circumstances, if the punitive value of the forfeiture is grossly disproportional to the gravity of the underlying offenses and the owner's culpability for the property's criminal use, the fine is unconstitutionally excessive. *Cf. id.*

### a. The proportionality assessment entails three considerations.

While the gross-disproportionality assessment is fact intensive and depends on the totality of the circumstances, it involves three considerations. We take each in turn, providing non-exclusive factors courts may take into account.

### i. Harshness of the Punishment

As mentioned above, use-based *in rem* fines may be both remedial and punitive. Whether they are subject to an excessiveness analysis in the first place depends on a categorical analysis of the applicable forfeiture statute. *See Austin*, 509 U.S. at 621–22, 622 n.14. But whether they are excessive

depends in part on the degree to which they are remedial or punitive. The more remedial a forfeiture is, the less punishment it imposes. Thus, when determining the harshness of the punishment, a court's assessment may include the following:

- the extent to which the forfeiture would remedy the harm caused;
- the property's role in the underlying offenses;
- the property's use in other activities, criminal or lawful;
- the property's market value;
- other sanctions imposed on the claimant; and
- effects the forfeiture will have on the claimant.

A couple of these considerations warrant additional explanation.

The State maintains that the property's value and the respondent's economic means ought to be excluded from consideration. We cannot agree.

To conduct a proportionality analysis at all, we need to consider the punishment's magnitude. And the owner's economic means—relative to the property's value—is an appropriate consideration for determining that magnitude. To hold the opposite would generate a new fiction: that taking away the same piece of property from a billionaire and from someone who owns nothing else punishes each person equally.

That said, an owner may be able to prove gross disproportionality without presenting evidence on wealth, income, or the deprivation of one's livelihood. *See, e.g.*, *Bajakajian*, 524 U.S. at 339–40, 340 n.15. Conversely, if an owner does not make certain showings on these matters, the court may determine that the owner failed to show gross disproportionality.[11]

---

[11] Notably, consideration of a person's economic situation is not a foreign practice for courts. When economic sanctions are imposed, even when the sanctions are remedial, courts regularly do not turn a blind eye to a person's economic resources. For example, when imposing court costs, a trial court in Indiana "shall conduct a hearing to determine whether the convicted person is indigent." Ind. Code § 33-37-2-3 (2018). When a person is required to make restitution or reparation as a condition of probation, the amount "may not exceed an amount the person can or will be able to pay." I.C. § 35-38-2-2.3(a)(6). *See generally Bell v. State*,

We recognize that the Court in *Bajakajian* took no position on whether a person's income and wealth are relevant considerations in judging the excessiveness of a fine. It noted that the defendant had not argued that his wealth or income were relevant to the proportionality determination; nor had he argued that the full forfeiture would deprive him of his livelihood. *Id.* at 340 n.15. And it observed that the district court made no findings on those matters. *Id.*

But the historical roots of the Excessive Fines Clause reveal concern for the economic effects a fine would have on the punished individual. Magna Carta—from which the Clause derives—specifically contemplated an economic sanction's effect on the wrongdoer, requiring "that amercements (the medieval predecessors of fines) should be proportioned to the offense and that they should not deprive a wrongdoer of his livelihood." *Bajakajian*, 524 U.S. at 335. Likewise, the abuses of sovereign power that led to the English Bill of Rights included the Star Chamber's imposition of heavy fines "in disregard 'of the provision of the Great Charter, that no man shall be amerced even to the full extent of his means,'" *Timbs*, 139 S. Ct. at 694 (Thomas, J., concurring in judgment) (quoting 2 Henry Hallam, *The Constitutional History of England from the Accession of Henry VII to the Death of George II* 46–47 (2d ed. 1829)); *see also* 4 William Blackstone, Commentaries *372 ("[N]o man shall have a larger amercement imposed upon him, than his circumstances or personal estate will bear . . . ."), *quoted in Timbs*, 139 S. Ct. at 688.

For these reasons, the forfeiture's effect on the owner is an appropriate consideration in determining the harshness of the forfeiture's punishment. We next examine the pair of considerations that stand on the opposite side

---

59 N.E.3d 959 (Ind. 2016). And when civil punitive damages are at issue, the defendant's financial circumstances are an appropriate consideration. *See Stroud v. Lints*, 790 N.E.2d 440, 445–46 (Ind. 2003); *id.* at 446 ("The defendant's wealth is ordinarily cited as a reason to escalate a punitive award, and that is consistent with the goal of deterrence. But that door swings both ways. An award that not only hurts but permanently cripples the defendant goes too far."). *See generally* National Task Force on Fines, Fees, and Bail Practices, Principles on Fines, Fees, and Bail Practices 6 (2016), https://www.ncsc.org/~/media/Files/PDF/Topics/Fines%20and%20Fees/Principles%201%2017%2019.ashx [https://perma.cc/E838-226A].

of the proportionality scales: the severity of the underlying offenses and the claimant's culpability for the property's criminal use.

### ii. Severity of the Offenses

When considering the severity of the underlying offenses, statutory penalties, sentencing guidelines, and trial courts' sentencing decisions supply important cues. For example, the maximum statutory penalty for an offense suggests the appropriate sentence for those who commit the worst variants of the crime. Sentencing guidelines may supply more detailed information about the appropriate sentence for the crime underlying the forfeiture. And if someone was convicted for the offense, the sentence actually imposed may provide even more precise insight into the offense's severity, including whether the offender "fit into the class of persons for whom the [criminal] statute was principally designed." *Bajakajian*, 524 U.S. at 338.

Accordingly, when determining the severity of the offense, a court's assessment may include the following:

- the seriousness of the statutory offense, considering statutory penalties;
- the seriousness of the specific crime committed compared to other variants of the offense, considering any sentences imposed;
- the harm caused by the crime committed; and
- the relationship of the offense to other criminal activity.

In the proportionality analysis, the severity of the offense must be considered alongside the owner's culpability.

### iii. Claimant's Culpability

The culpability consideration focuses on the claimant's blameworthiness for the property's use as an instrumentality of the underlying offenses. As mentioned above, if a claimant is entirely innocent of the property's misuse, that fact alone may render a use-based *in rem* fine excessive. On the other end of the spectrum is a claimant who

used the property to commit the underlying offenses. In between these poles is a range of blameworthiness for the property's criminal use. *See von Hofe*, 492 F.3d at 187–89. Thus, a court should consider where, in this range, the claimant's culpability lies.

Although we've outlined the considerations and certain relevant factors for the gross-disproportionality assessment applicable to use-based *in rem* fines, we must also observe how that inquiry is distinct from a gross-disproportionality analysis under the Eighth Amendment's Cruel and Unusual Punishments Clause.

### b. The Excessive Fines Clause and the Cruel and Unusual Punishments Clause impose distinct gross-disproportionality limits.

While a gross-disproportionality standard operates in both the Cruel and Unusual Punishments Clause and the Excessive Fines Clause, the two clauses are independent, imposing parallel—rather than interlinked—limits on the government's power to punish. *See Browning-Ferris*, 492 U.S. at 263.

Thus, a use-based fine may be excessive even if a person would presumably prefer the fine over a term of imprisonment that would not violate the Cruel and Unusual Punishments Clause. We observe three reasons why excessiveness under the Excessive Fines Clause does not turn on what is prohibited by the Cruel and Unusual Punishments Clause. *See Alexander*, 509 U.S. at 558–59 (observing that a certain rule applicable to the prohibition against cruel and unusual punishments does not apply to an Excessive Fines Clause analysis).

First, the Framers of our Constitution erected, in the Eighth Amendment, multiple, separate barricades against the government's punishing power. This structure alone reveals that one limit is not the measure of the other. Indeed, if analysis under the Cruel and Unusual Punishments Clause dictates the analysis and outcome under the Excessive Fines Clause, then the Excessive Fines Clause is superfluous or hollow. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The

Interpretation of Legal Texts 174–79 (2012); *cf. United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."); *Harmelin v. Michigan*, 501 U.S. 957, 978 n.9 (1991) (opinion of Scalia, J.). In other words, because a fine is a punishment for some offense, equating "excessive" with "cruel and unusual" would mean that the Excessive Fines Clause provides no protection different from the Cruel and Unusual Punishments Clause.

Second, comparing *in rem* fines to non-fines is inapposite—like asking whether a fine is somehow less expensive than a sentence is lengthy. To be sure, the economic nature of fines warrants protection distinct and independent from the Cruel and Unusual Punishments Clause, as the government often stands to benefit from fines. And this incentive creates a danger "that fines, uniquely of all punishments, will be imposed in a measure out of accord with the penal goals of retribution and deterrence." *Harmelin*, 501 U.S. at 979 n.9 (opinion of Scalia, J.), *quoted in part in Timbs*, 139 S. Ct. at 689. Reflecting this particular danger, some early state constitutions prohibited excessive fines without limiting other forms of punishment. *Id.*

Another difference distinguishes criminal punishment from *in rem* fines: criminal punishment is imposed for the commission of a crime; *in rem* fines are imposed for the claimant's role in the property's use in a crime. *See Ursery*, 518 U.S. at 294 (Kennedy, J., concurring) ("[T]he instrumentality-forfeiture statutes are not directed at those who carry out the crimes, but at owners who are culpable for the criminal misuse of the property."). Thus, although both gross-disproportionality standards are high bars for establishing unconstitutionality, the conduct punished is different, creating different data points for the proportionality assessments.

Finally, maintaining independent analyses for the two Clauses aligns with the Supreme Court's reasoning in *Bajakajian*. Although the Court drew upon the gross-disproportionality standard articulated in Cruel and Unusual Punishments Clause precedents, it did not say that it was importing the underlying cruel-and-unusual-punishment analysis. *See Bajakajian*, 524 U.S. at 336. While the Court recognized that prison-term

sentences prescribed for certain offenses are clues to the gravity of an offense, *id.* at 339 n.14, it did not supply a conversion rate for dollars to years of imprisonment. Indeed, it did not reason that $357,144 (the amount of the forfeiture) equated to a prison term that would be cruel and unusual punishment. *Id.* at 339–40; *accord Alexander*, 509 U.S. at 558–59.

Underscoring that the proportionality inquiry in this case is distinct from a Cruel and Unusual Punishments Clause proportionality inquiry, we now turn to the facts of this case.

### c. The trial court must apply the outlined proportionality test to the facts of Timbs's case.

We have in the record some information about the harshness of the forfeiture's punishment, the severity of the offense, and Timbs's culpability for the Land Rover's misuse. For example, the State acknowledged "most of what is occurring here is punitive," rather than remedial. The criminal case file (of which the trial court took judicial notice) indicates Timbs was indigent and lacked income and savings. And we know both the statutory penalties tied to the underlying Class B felony and the sentence that the criminal court imposed on Timbs for his commission of that offense.

But the proportionality analysis we've outlined is factually intensive and depends on the totality of the circumstances. Because the trial court did not have the benefit of this analytical framework, we do not have the benefit of a record (including factual findings) developed in light of the appropriate analytical structure.

We therefore remand to the trial court for further proceedings consistent with this opinion and to apply the proportionality test to the facts of this case. Specifically, when the trial court applies the proportionality test, the court must determine whether Timbs has overcome his burden to establish that the harshness of the forfeiture's punishment is not only disproportional, but grossly disproportional, to the gravity of the underlying dealing offense and his culpability for the Land Rover's corresponding criminal use.

# Conclusion

Over twenty-five years ago, the Supreme Court of the United States unanimously held that *in rem* forfeitures can be punitive and, thus, fines subject to the Eighth Amendment's excessiveness limitation. It left to lower courts the task of establishing the appropriate measure of excessiveness—a task that we take up today.

We accordingly hold that a use-based *in rem* fine is excessive if (1) the property was not an instrumentality of the underlying crimes, or (2) the property was an instrumentality, but the harshness of the punishment would be grossly disproportional to the gravity of the underlying offenses and the owner's culpability for the property's misuse.

Here, Timbs's Land Rover was an instrumentality of the underlying offense of drug dealing. But we remand for the trial court to answer the question of gross disproportionality based on the framework we set out.

We thus vacate and remand.

David, Massa, and Goff, JJ., concur.
Slaughter, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Kian J. Hudson
Deputy Solicitor General

Aaron T. Craft
Chandra K. Hein
Julia C. Payne
Justin F. Roebel
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Samuel B. Gedge
Institute for Justice
Arlington, Virginia

Wesley Hottot
Institute for Justice
Seattle, Washington

J. Lee McNeely
Cynthia A. Bedrick
Scott A. Milkey
McNeely Stephenson
Shelbyville, Indiana

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

ATTORNEYS FOR AMICI CURIAE AMERICAN CIVIL LIBERTIES
UNION, CATO INSTITUTE, DRUG POLICY ALLIANCE, FINES AND
FEES JUSTICE CENTER, LAW ENFORCEMENT ACTION
PARTNERSHIP, & R STREET INSTITUTE

Joshua S. Lipshutz
Gibson, Dunn & Crutcher LLP
Washington, D.C.

Brian J. Paul
Andrew D. Dettmer
Faegre Baker Daniels LLP
Indianapolis, Indiana

Thomas Q. Swanson
Daniel L. Chen
Gibson, Dunn & Crutcher LLP
San Francisco, California

ATTORNEY FOR AMICUS CURIAE FOUNDATION FOR MORAL LAW

Richard A. Greenwalt
Greenfield, Indiana

ATTORNEY FOR AMICI CURIAE STATES OF UTAH, ARKANSAS,
HAWAII, LOUISIANA, OKLAHOMA, AND TEXAS

Kevin S. Smith
Special Assistant Utah Attorney General
Fishers, Indiana

**Slaughter, J., dissenting.**

I respectfully dissent from the the Court's thoughtful, scholarly opinion for two reasons.

First, the Court's announced rule subjects the excessive-fines inquiry to a highly fact-specific, multifactor balancing test that turns on the totality of the circumstances. The problem with such tests—unlike bright-line rules—is that they leave litigants and lower courts uncertain about how a particular case with its particular facts will be decided. Such an approach creates the impression, because it reflects the reality, of an "eye-of-the-beholder" jurisprudence—that law is not a fixed set of rules to be applied neutrally, but a hodgepodge of factors that yields varied, unpredictable outcomes from case to case. Such variable results are not the fault of the judges applying the factors but the inevitable—and regrettable—byproduct of the multifaceted inquiries we impose on them. To be sure, some legal questions may defy ready application of bright-line rules. But our goal should be to embrace such rules when possible. We should turn to contextual, totality-of-the-circumstances inquiries only as a last resort, not as a first option. If the test the Court announces today is going to be the prevailing legal standard, it should be the Supreme Court of the United States that says so authoritatively.

In lieu of our Court's test, I would embrace the State's proposed rule, which asks whether the forfeited asset was the instrumentality of a crime. In my view, that is where the excessiveness inquiry under the Eighth Amendment begins and ends—at least until the Supreme Court tells us otherwise. This approach is easy to apply, is consistent with the Supreme Court's historical practice of approving *in rem* forfeitures that were the instrumentality of a crime—regardless of their disproportionality—and has never been squarely rejected by the Supreme Court's recent excessive-fines case law. In *Austin v. United States*, 509 U.S. 602 (1993), the Supreme Court held that the Excessive Fines Clause applies to *in rem* forfeitures. See *id*. at 618-22. But the Court did not announce the standard for evaluating excessiveness. Instead, it remanded the case so lower courts could fashion an appropriate standard. *Id.* at 622, 623 n.15. Five years later, in *United States v. Bajakajian*, 524 U.S. 321 (1998), which addressed the

excessiveness of an *in personam* forfeiture, the Court rejected the government's attempt to import an instrumentality inquiry for *in rem* forfeitures onto its excessiveness test for *in personam* forfeitures. *Id*. at 333-34 & n.8.

Today, our Court invokes *Bajakajian* to reject the State's argument for an instrumentality test. But *Bajakajian*'s discussion of proportionality for measuring the excessiveness of *in personam* forfeitures does not mean that proportionality also is appropriate for measuring the excessiveness of *in rem* forfeitures. The fact is, the Supreme Court still has not decided this precise question, despite the lapse of twenty-six years since *Austin*. Until that Court pronounces a different rule, I would not engraft its proportionality inquiry for *in personam* forfeitures onto the historical instrumentality test in this *in rem* case. We should not try to divine where the Supreme Court's jurisprudence is headed, extrapolating to what may seem a likely outcome based on few available data points.

Second, I also respectfully dissent because of our disposition today. We do neither the parties nor the lower courts any favors by remanding so the trial court can apply our Court's newly announced test. In doing so, we needlessly prolong resolution of this case. The Court says that further development of the factual record is necessary to apply its new test, without specifying what additional facts to adduce or how, precisely, to apply the test to any newly found facts. The Court also says a remand is warranted because the trial court did not have the "benefit" of our "analytical framework" the first time it heard the case. With today's opinion, the trial court now knows our "framework" but still lacks the "benefit" of our guidance for applying it. I do not envy the trial court's task. Personally, I have no idea what today's test means for Timbs's excessiveness claim. Instead of remanding for further proceedings, we should apply our test and declare a winner.

Here, as the Court observes, Timbs used the Land Rover both to obtain drugs and to transport himself and the drugs to their place of sale. Thus, his vehicle was the instrumentality of a crime—"the actual means by which an offense was committed." *Bajakajian*, 524 U.S. at 333 n.8. Applying

this analysis, I would hold that the State's forfeiture was not excessive under the Eighth Amendment.